AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>10015 Lake City Way NE, Unit #328, Seattle, WA; and a<br>black 2002 Infiniti Q45, bearing WA license plate number<br>ACG2169, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.    MJ18-436 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

10015 Lake City Way NE, Unit #328, Seattle, WA; and a black 2002 Infiniti Q45, bearing WA license plate number ACG2169, as further described in Attachment A

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B for list of items to be seized.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Possession with intent to distribute controlled substances; conspiracy to distribute controlled substances |

The application is based on these facts:

See affidavit of Special Agent Geoffrey Provenzale

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA Special Agent Geoffrey Provenzale
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____09/19/2018_____

_____
*Judge's signature*

City and state:  Seattle, Washington

Chief US Magistrate Judge Brian A. Tsuchida
*Printed name and title*

**AFFIDAVIT OF GEOFFREY PROVENZALE**

STATE OF WASHINGTON            )
                                                   )          ss
COUNTY OF KING                     )

I, Geoffrey Provenzale, a Special Agent with the Drug Enforcement Administration, Seattle, Washington, having been duly sworn, state as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since April 2015.  I am currently assigned to the Seattle Field Division.  In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses.  I have received specialized training in the enforcement and investigation of the Controlled Substance Act.  I have received over 620 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances.

2.      In my role as a Special Agent for the Drug Enforcement Administration, I have negotiated for and purchased narcotics acting in an undercover capacity.  I have participated in narcotics investigations (i.e. heroin, fentanyl, cocaine, marijuana, and methamphetamine) which have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotic-related evidence and the forfeiture of narcotics related assets.  I have been involved in the service of search warrants as part of these investigations.  As a result of my experience in serving these search warrants, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  distribute controlled substances.  I am also familiar with the various methods of
2  packaging, delivering, transferring, and laundering drug proceeds.  Additionally, through
3  my training and experience, I can identify illegal drugs by sight, odor, and texture.

4      3.    I have written affidavits in support of court authorized federal warrants and
5  orders in the Western District of Washington for TIII interceptions, GPS tracking of
6  telephones, search warrants, and tracking of vehicles.  Additionally, I have testified in
7  grand jury proceedings, written investigative reports, and conducted and participated in
8  numerous interviews of drug traffickers, of various roles within drug organizations, which
9  has provided me with a greater understanding of the methods by which drug trafficking
10  organizations operate.

11         **II.**       **PURPOSE OF AFFIDAVIT**

12      4.    This application seeks permission to search the following locations, which
13  are more particularly described in Attachment A, attached hereto and incorporated by this
14  reference as if set forth fully herein.  As summarized herein, each location is believed to
15  be utilized by one or more participants in the crimes described herein, and there is
16  probable cause to believe evidence of those crimes will be found at these locations:

17      a.    **10015 Lake City Way NE, Unit #328, Seattle, Washington:**
18  Hereinafter referred to as the "**target location**."  Investigators believe the **target location**
19  is utilized by Richard Sharon.

20      b.    **A black 2002 Infiniti Q45, Washington license plate number
21  ACG2169 and VIN JNKBF01A22M004107:** Hereinafter referred to as the "**target
22  vehicle**."  According to Washington Department of Licensing (DOL) the **target vehicle**
is registered to Richard Sharon at 815 1st Avenue, Apt. 335, Seattle, Washington.

23      5.    I believe the **target location** and **target vehicle** are presently being used in
24  the Western District of Washington in furtherance of the following federal criminal
25  offenses: Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1),
26  and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846.

27
28  AFFIDAVIT OF SA PROVENZALE
USAO 2018R01133 - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6.      I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA.  When I refer to registration records for vehicles, I am relying on records obtained from the Washington State DOL.  Insofar as I have included event times in this affidavit, those event times are approximate.

7.      Since this affidavit is being submitted for the limited purpose of obtaining authority to search the **target location** and **target vehicle**, I have not included every fact known concerning this investigation.  I have set forth only the facts that I believe are essential for a fair determination of probable cause that the target subject(s) are involved in drug trafficking, and the **target location** and **target vehicle** are being used to facilitate that drug trafficking.

### III.      SUMMARY OF INVESTIGATION

8.      The DEA and Seattle Police Department (SPD) are investigating Richard Sharon who distributes narcotics, including crystal methamphetamine, in the Western District of Washington.  Through the use of a confidential source, investigators have purchased crystal methamphetamine from Sharon.

9.      Through a state authorized court order, investigators have also obtained tracking information for the **target vehicle**, which is registered to Sharon, and a phone associated with Sharon: 206-618-2421 (hereinafter the "target telephone").  Location tracking data of both the **target vehicle** and target telephone have revealed that Sharon appears to utilize the **target location** on a regular basis.

AFFIDAVIT OF SA PROVENZALE
USAO 2018R01133 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2

## IV.   PROBABLE CAUSE FOR SEARCHING THE TARGET LOCATION AND TARGET VEHICLE

3

### Controlled purchase from Richard Sharon

4   10.   During August 2018, a confidential source (CS1)[1] identified Richard

5   Sharon to investigators as an individual who had access to multiple pound quantities of

6   crystal methamphetamine.  CS1 provided the target telephone as a number he/she

7   communicated with Sharon on.  Investigators then obtained a driver's license photo of

8   Sharon provided by WA DOL and showed it to CS1.  CS1 confirmed the photo was of

9   who he/she knew as Richard Sharon.  A subsequent records check of the target telephone

10  revealed the target telephone was subscribed to "Richard D. Sharon" at the same address

11  the **target vehicle** is registered to**:** 815 1st Avenue, Apt. 335, Seattle, Washington.

12  Sharon has also provided the target telephone to law enforcement in the past as a contact

13  number; based on police reports contained in law enforcement databases.

14  11.   On a date during mid-August 2018, CS1, at the instruction of investigators,

15  arranged a meeting with Sharon to purchase a quantity of crystal methamphetamine in

16  excess of 500 grams.

17  12.   On the same date, at approximately 2:00 p.m., investigators met with CS1

18  prior to the meeting with Sharon.  CS1 and his/her vehicle were searched both prior to

19  and after the meeting with Sharon.  Both were found to be free of unauthorized items and

20  contraband.

21  13.   CS1 stated that Sharon has an office at "ActivSpace" located at Lake City

22  Way NE on the 3rd floor, which is the same address as the **target location**.  CS1 added

23  "ActivSpace" is a building that rents small office spaces and that it was possible that

24  Sharon utilizes the "ActivSpace" to store narcotics, though CS1 stated he/she had no

25

26
27   [1] According to NCIC, CS1 was convicted before 2011 in the Western District of Washington for Conspiracy to
Distribute a Controlled Substance, Distribution of Cocaine, Possession with Intent to Distribute Cocaine and
Possession with Intent to Distribute Methamphetamine.  CS1 was arrested in 2018 for distribution of controlled
28   substances and is cooperating with law enforcement for sentencing consideration.

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 4

1   proof of this.  CS1 also stated that Sharon drives a model Q45 Infiniti.  Investigators were

2   previously aware that Sharon is the legal owner of an Infiniti Q45, WA/ACG2169: the

3   **target vehicle**.

4         14.    Investigators then provided CS1 with official funds to purchase

5   methamphetamine from Sharon.  CS1 was also provided with an audio

6   recording/transmitting device.  CS1 was kept under constant surveillance while travelling

7   to the meet location with Sharon: a public parking lot located in Seattle, Washington.

8         15.    On the same date, at approximately 3:47 p.m., an investigator observed the

9   **target vehicle** arrive in the parking lot, and CS1 enter the front passenger seat of the

10  **target vehicle**.  An investigator observed that upon entering the **target vehicle**, CS1 was

11  empty handed.  The **target vehicle** then then left the parking lot, drove a short distance,

12  returned to the parking lot, and parked in the rear of the lot.  Investigators later noted it

13  appeared the **target vehicle** was "squaring the block," a phrase meaning the vehicle

14  circled the area.

15        16.    At approximately 4:00 p.m., an investigator observed CS1 exit the **target**

16  **vehicle** carrying a small black box.  CS1 was followed to a neutral location after the

17  meeting with Sharon where he/she met with investigators.  Immediately upon meeting

18  with investigators, CS1 turned over to investigators a quantity of suspected crystal

19  methamphetamine in the aforementioned small box.  CS1 stated that Sharon was the only

20  occupant of the **target vehicle**.

21        17.    The **target vehicle** remained parked at the meeting location for a short

22  period of time and investigators were unable to see into the **target vehicle** due to dark tint

23  on the **target vehicle's** windows.  Investigators conducted constant visual surveillance on

24  the **target vehicle** during this time.

25        18.    At approximately 4:05 p.m., the **target vehicle** departed the parking lot and

26  was followed to a nearby gas station parking lot where investigators observed and

27  photographed the driver as he exited the **target vehicle**.  At that time, investigators

28

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  positively identified the driver of the **target vehicle** as Richard Sharon based on a

2  Washington DOL photo for Sharon.  Surveillance was terminated shortly thereafter.

3      19.    Pursuant to the controlled purchase, investigators transported the suspected

4  methamphetamine to the Seattle PD North Precinct.  At the Seattle PD North Precinct,

5  the narcotics were photographed, weighed, and a presumptive field test was conducted.

6  The suspected narcotics tested positive for methamphetamine.

7          **Events after controlled purchase**

8      20.    On August 30, 2018, subsequent to the controlled purchase, Washington

9  State Superior Court Judge Jean A. Rietschel authorized state tracking warrants for the

10  **target vehicle** and target telephone: 206-618-2421.

11      21.    Upon obtaining tracking data for both the **target vehicle** and target

12  telephone, investigators observed that both the target telephone and the **target vehicle**

13  traveled daily to 10015 Lake City Way NE, Seattle, Washington: the **target location**.

14  The **target location** is a unit within a building called "Activspace" which offers units for

15  individuals as office/creative space, with secure outer entrances and locked units.  In

16  addition, on September 18, 2018, investigators received records from "ActivSpace" for

17  current tenants/renters at 10015 Lake City Way NE, Seattle, Washington, and noted that

18  Richard Sharon was listed on the tenant list for Unit #328.

19      22.    Per electronic tracking data, Sharon appears to travel frequently during

20  night hours (between 7 p.m. and 6 a.m.).  At times, the **target vehicle** will stay parked at

21  the **target location** during the late evening only to depart and travel to a local casino at

22  2:30 a.m. not returning until the following late morning.  The tracking data indicates that

23  Sharon appears to have no location he "overnights" at on a regular basis as the tracking

24  data reveals he regularly travels late at night, at times appearing to "overnight" at hotels

25  or casinos in the Seattle metropolitan area.  However, on occasion, tracking data has

26  indicated Sharon "overnighted" at the **target location,** even though the target location

27  does not permit residential use.

28

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 6

23.     Tracking data also indicates that Sharon appears to have no location he travels to on a daily basis besides the **target location**.  This is significant as it is probable the **target location** is a location where Sharon's personal property is stored.  Tracking data also reveals that Sharon's listed address on his driver's license, and the registered address of both the target telephone and the **target vehicle,** are not locations he has appeared to travel to at all during the tracking period.  Based on my training and experience, narcotics traffickers will at times register vehicles and phones in nominee or old addresses in an effort to thwart law enforcement.  Based upon information received from CS1, "ActivSpace," as well as the **target vehicle** travelling to 10015 Lake City Way NE on a daily basis, I believe that the **target location** is a location utilized by Sharon regularly as a possible "stash house."

24.     Based on my training and experience, narcotics traffickers at times will maintain a "stash house" (that they may or may not also utilize as a regular residence), which they believe is a safe/secure place to store narcotics and/or proceeds from the sale of narcotics.  I believe that due to Sharon appearing to have access to large amounts of narcotics; as well as the **target location** being an address he travels to daily; it is probable the **target location** will have narcotics and/or proceeds stored at it.

25.     On September 16, 2018, investigators observed another meeting with Sharon and CS1.  During this meeting, prior to meeting with CS1, investigators observed the **target vehicle** arrive in the area of the meet location: a restaurant in Seattle, Washington.  Per tracking data, the target telephone appeared to travel to the area of the restaurant in tandem with the **target vehicle**.  I later observed Sharon enter into the restaurant and speak with CS1.  Upon departing the restaurant, an investigator observed Sharon enter the **target vehicle** and depart the area.  Sharon was the sole occupant of the **target vehicle**.  Tracking data showed that Sharon returned directly from the meeting to the **target location.**

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

26.     CS1 has also provided information that Sharon is "an investigator."  CS1 later clarified that he/she believes Sharon is an investigator for a defense lawyer who law enforcement have discovered represents federal criminal defendants in this district.  Toll records for Sharon reflect over 200 communications between the criminal defense attorney and Sharon between March 20, 2018, and July 20, 2018.  After a conversation between CS1 and Sharon, CS1 reported to investigators that Sharon had identified an individual who was a cooperator for the government.  Based on my experience, defense investigators for federal defense lawyers have access to discovery for federal defendants as well as protected material including information relating to cooperators.  Records received from the state of Washington list Rich Sharon as receiving a total of $150 in wages between January 1, 2014, and March 31, 2018 (the last available data).  Although Sharon appears to have no reported wages, he could simply be paid with cash for his services or work as a contractor.  Due to this information, the warrant also seeks permission to seize any legal documents reflecting criminal investigations, including any legal discovery found within the **target location** and **target vehicle** as evidence of any violation of a federal court's Protective Order.

## V.     KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

27.     Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

a.     During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings that show ownership, dominion, and control of vehicles, residences, and/or storage units.

b.     It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal them from law enforcement.

AFFIDAVIT OF SA PROVENZALE
USAO 2018R01133 - 8

1           c.      Narcotics traffickers maintain books, records, receipts, notes,

2    ledgers, airline tickets, money orders, and other papers relating to the transportation,

3    ordering, sale, and distribution of controlled substances.  Narcotics traffickers commonly

4    "front," that is, provide on consignment, controlled substances to their clients.  These

5    books, records, receipts, notes, and ledgers, commonly known as "pay and owe sheets,"

6    are maintained where traffickers have ready access to them.

7           d.      Traffickers of controlled substances, and those who assist them,

8    maintain and tend to retain accounts or records of their drug trafficking activities,

9    including lists of drug quantities and money owed, telephone records including contact

10   names and numbers, photographs, and similar records of evidentiary value.  These items

11   are generally kept in locations where drug traffickers believe their property is secure and

12   will remain undetected from law enforcement, such as inside their homes and vehicles.

13   Sometimes, these locations are not their primary residence, but instead used for the

14   purposes of storing and distributing drugs.

15          e.      Traffickers of controlled substances commonly maintain records

16   reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their

17   suppliers, customers and associates in the trafficking organization.  Traffickers

18   commonly maintain this information in books or papers as well as in cellular telephones

19   and other electronic devices.  Traffickers often maintain cellular telephones for ready

20   access to their clientele and to maintain their ongoing narcotics business.  Traffickers

21   frequently change their cellular telephone numbers to avoid detection by law

22   enforcement, and it is common for traffickers to use more than one cellular telephone at

23   any one time.

24          f.      Traffickers maintain evidence of their criminal activity at locations

25   that are convenient to them, including their residences and vehicles.  This evidence often

26   includes more than contraband and paraphernalia and includes financial records, records

27   of property and vehicle ownership, records of property rented, records of storage facilities

28

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes.  Narcotics traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product, or have photo or video security systems that record images from their homes or property.  These individuals usually maintain these photographs and recordings in their possession or at their premises, in a safe place.  Such evidence may be kept at a safe location for a long time after the drug deal(s) to which they pertain are completed, if the location remains under the control of the trafficker.

g.      Traffickers frequently maintain items necessary for weighing, packaging and cutting drugs for distribution.  This paraphernalia often includes, but is not limited to, scales, plastic bags and other packaging materials, sifters, containers, and cutting/diluting agents and items to mask the odor of narcotics.  Persons trafficking and using controlled substances frequently sell more than one type of controlled substance at any one time.

h.      It is common for drug dealers to also be users of their product, and it is common for drug users to maintain paraphernalia associated with the use of controlled substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

i.      Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

j.      Traffickers often maintain weapons, including firearms and ammunition, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.      Traffickers often have false identification documents and identification documents in the names of others.  Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of these assets by government agencies, while continuing to use these assets and exercise
2  dominion and control over them.

3           l.      Drug trafficking is a cash business, often involving large amounts of
4  cash at any one time, so drug traffickers often have money counters.

5           m.      Persons involved in drug trafficking conceal in their residences
6  caches of drugs, large amounts of currency, financial instructions, precious metals,
7  jewelry, and other items of value and/or proceeds of drug transactions as well as evidence
8  of financial transactions relating to obtaining, transferring, secreting, or the spending of
9  large sums of money made from engaging in narcotics trafficking activities.

10          o.      Unexplained wealth is probative evidence of crimes motivated by
11 greed, in particular, trafficking in controlled substances.

12          p.      Illegal drug trafficking is a continuing activity over months and even
13 years.  Illegal drug traffickers will repeatedly obtain and distribute controlled substances
14 on a somewhat regular basis, much as any distributor of a legitimate commodity would
15 purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which
16 fluctuates in size depending upon various factors, including the demand and supply for
17 the product.  I would expect the trafficker to keep records of his illegal activities for a
18 period of time extending beyond the time during which he actually possesses illegal
19 controlled substances, in order that he can maintain contact with his criminal associates
20 for future drug transactions, and so that he can have records of prior transactions for
21 which, for example, he might still be owed money, or might owe someone else money.
22 These records are often created in code

23          q.      Drug trafficking is a cash business, and in order to escape notice
24 from authorities for using unexplained income, or hide excessive cash from illegal
25 activities, traffickers either keep large quantities of cash at home or other secure
26 locations, such as safe deposit boxes, or convert the cash into other valuable assets, such
27 as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth.

28

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Records of such conversions are often stored where a trafficker lives or in other secure
2   locations such as safe deposit boxes.

3           r.      Money launderers often have banking records to include but not
4   limited to, deposit or withdrawal slips, bank statements, checks, or money orders.  Some
5   of these banking records may not be in their own name. Money launderers often have
6   several accounts documented in some form, or instructions detailing how to handle each
7   respective account.  For example, they may have a list of accounts belonging to several
8   different people with instructions for how much to deposit or withdraw from each and
9   often maintain this information for long periods of time in their residences or safe deposit
10  boxes.

11          s.      Money launderers often have records or evidence related to how the
12  proceeds were spent or concealed and often maintain this information for long periods of
13  time in their residences or safe deposit boxes.  Evidence may include jewelry and/or
14  vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts.
15  The use of bank accounts is a common money movement technique used by drug
16  traffickers to receive payment for narcotics from customers outside of their geographic
17  region.  It is common for a trafficker to use several bank accounts for this purpose
18  simultaneously in an attempt to avoid detection by the financial institutions and/or law
19  enforcement.  The use of multiple accounts, and the commingling of illicit funds with
20  legitimate funds in particular, is often part of the plan to conceal the illegal activity or
21  may be part of the overall integration mechanism by which the illicit funds are made to
22  appear as part of the legitimate income so that only a small portion of or even none of the
23  funds from an account are seized.

24          28.     Based on my training and experience, and that of those around me, I also
25  know that drug dealers use cellular telephones as a tool or instrumentality in committing
26  their criminal activity, to include laundering their proceeds.  They use them to maintain
27  contact with their suppliers, distributors, and customers.  They prefer cellular telephones

28

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 12

because, first, they can be purchased without the location and personal information that land lines require.  Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs.  Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily.  Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business.  These items may be kept for months and months in a safe place controlled by the drug trafficker.  Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes.  This includes the following:

a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.      The stored list of recent received, missed, and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user.  This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts.  If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting.

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.      Stored text messages are important evidence, similar to stored numbers.  Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.      Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering.  Evidence of the use of such applications can be obtained from smart phones, and is evidence of a smart phone user's efforts to avoid law enforcement detection.

e.      Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user.  Pictures also identify associates likely to be members of the drug trafficking organization.  Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them.  Geocode information is typically the longitude and latitude where the photo was taken.  Showing where the photo was taken can have evidentiary value.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located

f.      Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VI.    CONCLUSION

29.    For the reasons set forth above, I respectfully submit there is probable cause to believe that evidence of the crime of Distribution of Controlled Substances and/or Conspiracy to Distribute Controlled Substances, and a violation of a federal Court Protective Order, as described in Attachment B, will be found in the **target location** and **target vehicle**, further described in Attachment A, and ask that a warrant be issued to search the **target location** and **target vehicle** for said evidence.

_____
GEOFFREY PROVENZALE
Special Agent, DEA

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 19th day of September, 2018.

_____
The Hon. Brian A. Tsuchida
Chief United States Magistrate Judge

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

**10015 Lake City Way NE, Unit #328, Seattle, Washington –** Referred to herein as the "**target location**." The location is an "ActivSpace" office/living space with an unknown amount of units. The location is located within a larger building that sits to the West of Lake City Way NE, south of NE 102nd St and north of NE 100th St. The structure is painted in red and gray.

**A black 2002 Infiniti Q45, Washington license plate number ACG2169 and VIN JNKBF01A22M004107 –** Referred to herein as the **"target vehicle."**

AFFIDAVIT OF SA PROVENZALE

USAO 2018R01133 - 16